**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WYLIE S. ROGERS, individually, and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>WELLS FARGO BANK, N.A., )<br><br>Defendant. ) | Case No. 1:19-cv-02596<br><br>Honorable Rubén Castillo, Chief Judge |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

**NOW COMES** the Plaintiff, WYLIE S. ROGERS ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through his undersigned counsel, responding to Defendant WELLS FARGO BANK, N.A.'s ("Wells Fargo") Rule 12(b)(6) motion to dismiss as follows:

### Introduction

The express language of the Fair Credit Reporting Act ("FCRA") explicitly prohibits the very same conduct committed by Wells Fargo in this case. Wells Fargo's Motion to Dismiss ("Wells Fargo's Motion") effectively asks this Court to read the relevant statute in a manner that conflicts with its plain language. Specifically, Wells Fargo argues that it can continue to access a consumer's credit report after the consumer's liability on a debt has been extinguished through bankruptcy. As set forth in detail below, Wells Fargo's interpretation of the statute is refuted by the express language of the statute and has been consistently rejected by courts in this District (including this specific Court) and courts nationwide. Simply put, Wells Fargo did not have a permissible purpose to access Plaintiff's credit report after his discharge because a bankruptcy discharge (1) ends the creditor/debtor relationship, which in turn terminates any permissible

1

purpose the creditor may have had to access a consumer's report and (2) enjoins acts to collect a discharged debt. For the reasons set forth below, Wells Fargo's Motion is without merit and must be denied in its entirety as a matter of law.

**Background**

The underlying facts in this case are relatively simple. On April 26, 2004, Plaintiff executed a mortgage and note in the amount of $106,800.00 ("subject loan" or "subject debt") in favor of Wells Fargo, secured by a property located at 6740 S. Oglesby Ave., Unit 2, Chicago, Illinois 60649 ("subject property"). (Compl. ¶¶2, 10.) At no point in time did Plaintiff reside at the subject property. (Compl. ¶2.) On June 27, 2016, Plaintiff filed a joint Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Illinois, Case Number 16-20862 ("Plaintiff's bankruptcy").[1] (*Id.* at ¶11.) On June 30, 2016, the Bankruptcy Noticing Center ("BNC") served Wells Fargo with notice of Plaintiff's bankruptcy filing and corresponding Chapter 13 Plan. (*Id.* at ¶13.) On August 10, 2016, Wells Fargo, through its counsel, presented its Motion for Relief from the Automatic Stay in Plaintiff's bankruptcy to proceed with foreclosure of the subject property. (*Id.* at ¶14.) The Motion acknowledged Plaintiff's intent to surrender the subject property. (*Id.*) On November 1, 2016, Plaintiff filed a modified Chapter 13 Plan ("Modified Plan"). (*Id.* at ¶15.) Plaintiff's Modified Plan proposed to surrender the subject property to Wells Fargo in full satisfaction of its secured claims. (*Id.* at ¶16.) On November 3, 2016, Plaintiff's Modified Plan was confirmed by the Bankruptcy Court ("Confirmed Plan"). (*Id.* at ¶17.)

Plaintiff fully performed his duties and made all payments as prescribed by his Confirmed Plan. (*Id.* at ¶18.) At no time did Plaintiff reaffirm the subject loan with Wells Fargo or otherwise state an intent to remain liable on the subject loan. (*Id.* at ¶19.) On August 24, 2017, the Bankruptcy

---

[1] Plaintiff filed a joint Chapter 13 bankruptcy with his spouse, who is not a party to this action.

2

Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject debt. (*Id.* at ¶20.) On August 26, 2017, the BNC served Wells Fargo with the Order of Discharge.[2] (*Id.* at ¶21.) Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction, which prohibits any act to collect upon the subject debt. (*Id.* at ¶22.) Plaintiff's personal liability on the subject debt was extinguished via his bankruptcy discharge, thus terminating his business relationship with Wells Fargo, and any of its successors and assigns. (*Id.* at ¶23.)

Since Plaintiff's bankruptcy discharge, Plaintiff has not opened any financial accounts with Wells Fargo or otherwise engaged in any business relationship with Wells Fargo. (*Id.* at ¶24.) After Plaintiff's bankruptcy discharge, Plaintiff obtained his Experian credit report and discovered that Wells Fargo obtained his credit report from Experian on September 6, 2017, after his bankruptcy discharge. (*Id.* at ¶¶25-26.) Plaintiff filed the instant case claiming that Wells Fargo violated 15 U.S.C. §1681b(f) by obtaining Plaintiff's Experian credit report after Plaintiff's bankruptcy discharge, without Plaintiff's consent and without a permissible purpose prescribed by the FCRA. (*Id.* at ¶45.)

## Standard of Review

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In ruling on a pending motion to dismiss, the court must construe the allegations in the complaint in a light most favorable to the plaintiff, accept as true all well-pleaded factual allegations set forth therein, and draw all reasonable inferences in favor of the non-moving

---

[2] At no time did Defendant file any proceeding to declare the subject debt as "non-dischargeable" pursuant to 11 U.S.C. §523 *et seq*.

party. *Fednav Int'l Ltd. v. Continental Ins. Co.,* 624 F.3d 834, 837 (7th Cir. 2010). In the event the court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile. *Ford v. Neese*, 119 F.3d 560, 563 (7th Cir. 1997).

## ARGUMENT

### I. Wells Fargo Had No Permissible Purpose to Access Plaintiff's Credit Report

"In its present form, 15 U.S.C. §1681b(f) provides that 'a person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with 15 U.S.C. §1681e by a prospective user of the report through a general or specific certification.'" *Miller v. Trans Union LLC,* 2007 U.S. Dist. LEXIS 14315, at *7 (N.D. Ill. 2007). "A credit report may be obtained by a person who 'intends to use the information in connection with a credit transaction involving the consumer and involving the review or collection of an account of the consumer." *Miller v. Wolpoff & Abramson, LLP,* 309 Fed. Appx. 40, 43 (7th Cir. 2009) *citing* 15 U.S.C. §1681b(a)(3)(A). "In other words, obtaining a person's consumer report in the course of attempting to collect the person's debt is considered a permissible purpose under the FCRA." *Smith v. Encore Capital Group, Inc.,* 966 F. Supp. 2d 817, 823 (E.D. Wisc. 2013).

Wells Fargo contends it had a permissible purpose to access Plaintiff's credit report after his bankruptcy discharge because Plaintiff maintained a legal interest in the subject property at the time Wells Fargo accessed his credit report. Specifically, Wells Fargo argues that the underlying foreclosure case was still pending at the time it accessed Plaintiff's credit report, and therefore Wells Fargo had the right to conduct an "account review" under the FCRA. Although Wells Fargo is correct that liens pass through bankruptcy unaffected, that does not provide it with a permissible

4

purpose to access Plaintiff's credit report after his bankruptcy discharge. Astonishingly, Wells Fargo has been found to have violated the FCRA for the very exact conduct it now argues is lawful. Specifically, a court in a 2008 case involving Wells Fargo rejected the very same argument advanced by Wells Fargo here and found that Wells Fargo's post-discharge access of a consumer's credit report to be a violation of the FCRA as a matter of law. *Goodby v. Wells Fargo Bank, N.A.,* 599 F. Supp. 2d 934, 942 (S.D. Ohio. 2008). Specifically, the *Goodby* court, in granting summary judgment in favor of Plaintiff, held:

> "The Court finds that Defendant did not have a 'legitimate business need' for Plaintiff's credit information. The account review could not be 'in connection with a transaction initiated by the consumer' because the only transaction between the parties initiated by Plaintiff was the mortgage loan which had been discharged in the bankruptcy proceedings. The account review was for a purpose only tangentially related to the extension of credit. There is nothing in the record indicating that the account review was obtained to either provide a benefit to Plaintiff or to collect a pre-existing debt. **Notwithstanding Plaintiff's name on the title to the property, as a practical matter, the parties did not have an existing relationship. Plaintiff had surrendered her rights to the property. In addition, Defendant would have been unable to collect any debt since it has been discharged in the bankruptcy proceedings. Therefore, Defendant did not have a permissible purpose under section 1681b(a)(3)(F)."** *Id.*

The facts in this case are on all fours with the facts in *Goodby*. Specifically, both cases involve plaintiffs who (1) surrendered a property in bankruptcy; (2) received a bankruptcy discharge; (3) had their credit reports accessed by Wells Fargo after their bankruptcy discharge; and (4) still held title to the properties at the time Wells Fargo accessed their credit reports. Accordingly, this Court should adopt the sound reasoning in *Goodby* and find that Wells Fargo did not have a permissible purpose to access Plaintiff's credit report after his bankruptcy discharge. *See also Barton v. Ocwen Loan Servicing LLC,* 2012 U.S. Dist. LEXIS 137536, at *7-8 (D. Minn. 2012) (allegations that mortgagee accessed credit report after bankruptcy discharge sufficient to support a §1681b(f) claim).

Moreover, this Court in *Freedom v. CitiFinancial, LLC*, 2016 U.S. Dist. LEXIS 97533, at *28 (N.D. Ill. 2016) (J. Castillo) addressed the precise legal issue in this case and found that a lender's access of a consumer's credit report after a bankruptcy discharge is sufficient to sustain a §1681b(f) claim. Specifically, this Court, in denying a lender's motion to dismiss, held:

> "It can be plausibly inferred from these allegations that Plaintiff no longer had a business relationship with [the lender] on December 26, 2014, when [the lender] accessed his credit report. Further factual development may show that [the lender] had some permissible reason to pull Plaintiff's credit report on that date, but at this stage, the Court must accept Plaintiff's allegations as true. He properly alleges that [the lender] accessed his credit report without a permissible purpose reason to do so, and accordingly, dismissal is not warranted." *Id.* at *28.

The facts in this case are nearly identical to the facts in *Freedom.* Specifically, both cases involve a Chapter 13 bankruptcy in which real estate was surrendered to the lender and the subject debt was subsequently discharged in bankruptcy. Given the glaring similarities between the cases, there is no reason this Court should reach a different legal conclusion in this case.

Moreover, other Courts in this District have similarly held that a lender's post-discharge access of a consumer's report supports a violation of §1681b(f). In *Souvigny v. Wells Fargo Home Mortgage, Inc.,* 2016 U.S. Dist. LEXIS 99875, at *22-24 (N.D. Ill. 2016) (J. Chang), plaintiffs alleged, as here, that Wells Fargo accessed their credit reports after they received a bankruptcy discharge, and thus without a permissible purpose under the FCRA because the bankruptcy discharge terminated any relationship between Wells Fargo and the plaintiffs. The *Souvigny* court found that these allegations were sufficient to support a §1681b(f) claim because Wells Fargo's "pull was without 'a legitimate business need' and not in connection with any credit transaction." *Id.* at *23. Likewise, in *Gagnon v. JPMorgan Chase Bank, N.A.,* 2017 U.S. Dist. LEXIS 374 (N.D. Ill. 2017) (J. Dow), the court found that the plaintiff sufficiently pled a §1681b(f) claim by alleging that the mortgage company accessed his credit report after he obtained a bankruptcy discharge. *Id.*

6

at *37-38. The *Gagnon* court found plaintiff's allegations sufficient to sustain his §1681(b) claim despite the fact that the mortgage company maintained a lien on the property at the time it accessed plaintiff's credit report. *Id.* at *38-39.

Here, Wells Fargo does not dispute that the subject debt was discharged in bankruptcy. Instead, Wells Fargo attempts to distinguish this case from *Freedom*. However, any minor differences in this case and *Freedom* are inconsequential as both cases involved a Chapter 13 bankruptcy in which real estate was surrendered to the lender and the underlying debt subsequently discharged in bankruptcy. Simply put, the event that triggers the prohibition to access a credit report is the bankruptcy discharge, not the transfer of title. Not surprisingly, Wells Fargo does not cite to any authority that stands for the proposition that a lender may access a consumer's credit report after a Chapter 13 discharge in which the underlying property was surrendered to the lender. Wells Fargo cites to *Germain v. Bank of Am., N.A.,* 2014 WL 5802018, at *5 (W.D. Wis. 2014) to support its position that it had a permissible purpose to access a consumer's credit report after a bankruptcy discharge. However, *Germain* is easily distinguishable as that case (1) was decided at summary judgment; (2) involved two consumers that did not surrender the underlying real estate to the lender; and (3) involved consumers that sought loss mitigation alternatives from the lender. *Id.* at *4-7. Here, we are at the pleading stage and Plaintiff unequivocally surrendered the subject property to Wells Fargo and at no time lived in the subject property or sought loss mitigation alternatives from Wells Fargo. Accordingly, Wells Fargo's reliance on *Germain* misses the mark by a wide margin. *See Gagnon,* 2017 U.S. Dist. LEXIS 374, at *38-29 (rejecting lender's reliance on *Germain* at the pleading stage and finding distinctions that are present here).

Moreover, Wells Fargo does not and cannot provide a valid explanation as to why it needed to access Plaintiff's credit report in relation to a debt it could no longer collect as a matter of law.

7

Simply put, Plaintiff's allegations are sufficient to support his §1681(b) claim. Wells Fargo was barred from collecting the subject debt from Plaintiff by virtue of Plaintiff's bankruptcy discharge. Moreover, any access of Plaintiff's credit report to facilitate collection is not authorized by the FCRA because the subject debt was no longer collectible as a matter of law. Wells Fargo was free to enforce its lien through foreclosure, but it had no permissible purpose under the FCRA to access Plaintiff's credit report. Accordingly, Wells Fargo's argument that it had a permissible purpose to access Plaintiff's credit report because it maintained a lien on the subject property must be rejected as it has been by all courts that have addressed the argument.

## II. Plaintiff Has Adequately Pled a Willful Violation of the FCRA

To state a claim that Wells Fargo willfully violated § 1681b(f), Plaintiff needs only to allege facts that, if true, give rise to a plausible inference that Wells Fargo acted willfully in accessing his credit report without a permissible purpose. *Smith v. LexisNexis Risk Solutions, Inc.*, 2014 U.S. Dist. LEXIS 27884, *13 (N.D. Ill. 2014). As a preliminary matter, Wells Fargo is correct that the Court *may* dispose a willfulness claim at the pleading stage, but it can only do so "when the allegations in a complaint, however true, could not raise a claim of entitlement." *Twombly,* 550 U.S. at 558. Here, Wells Fargo contends that Plaintiff's complaint fails to state a claim for a willful violation of the FCRA because "plaintiff does not and cannot plausibly allege that the account review of a chapter 13 discharged debtor is expressly forbidden by the language of the statute, or binding regulation, or appellate case law." (Def. Mot. pg. 7.) Unfortunately for Wells Fargo, an objective reading of the statute dictates that Wells Fargo was prohibited from accessing Plaintiff's credit report. Specifically, the statute, in pertinent part, provides that a credit report may be obtained by a person who 'intends to use the information in *connection with a credit transaction* involving the consumer and involving the review or *collection of an account of the consumer*."

8

§1681b(a)(3)(A) (emphasis added). Here, Plaintiff affirmatively alleges he "has not opened any financial accounts with Defendant or otherwise engaged in any business relationship with Defendant" after his bankruptcy discharge. (Compl. ¶24.) Accordingly, Wells Fargo could not have possibly accessed his credit report in connection with a credit transaction. Moreover, Wells Fargo was prohibited from collection of the subject debt by virtue of Plaintiff's bankruptcy discharge. Accordingly, Wells Fargo was prohibited from accessing Plaintiff's credit report for purposes of collecting on the discharged debt. Lastly, an account review was also prohibited because the "account review could not be 'in connection with a transaction initiated by the consumer' because the only transaction between the parties initiated by Plaintiff was the mortgage loan which had been discharged in the bankruptcy proceedings." *Goodby,* 599 F. Supp. at 942.

Simply put, the express language of the FCRA dictates that Wells Fargo had no permissible purpose to access Plaintiff's credit report. This is not a situation in which courts have reached different conclusions regarding the precise legal issue present here. Wells Fargo after having summary judgment entered against it in *Goodby* in 2008, has been on notice for over 10 years that accessing a consumer's report after a bankruptcy discharge is not permitted by the FCRA. Despite having knowledge that it cannot access consumers' credit reports after a bankruptcy discharge, Wells Fargo arrogantly continues its unlawful practices. That, standing alone, is sufficient to support Plaintiff's willfulness claim.

Not surprisingly, Wells Fargo has not cited to *any* authority that supports its position that it had a permissible purpose to access Plaintiff's credit report after Plaintiff's bankruptcy discharge. As discussed above, the only case cited by Wells Fargo is clearly distinguishable as it involved consumers who sought loss mitigation options, which if successful, would constitute a new credit transaction or contract between the parties. Here, Plaintiff made it abundantly clear that

9

he was surrendering the subject property and at no time did he seek loss mitigation offers or agreements. Accordingly, an objective reading of §1681b(f) dictates that Wells Fargo had no permissible purpose to access Plaintiff's credit report. Moreover, courts have repeatedly held that creditors may not access a consumer's credit report after a bankruptcy discharge. At the very least, Wells Fargo's reading of the statute was reckless, which is sufficient to qualify as willful conduct under the FCRA. *Murray v. New Cingular Wireless Services, Inc.,* 523 F.3d 719, 725-26 (7th Cir. 2008) (finding that the Supreme Court has held that reckless violations of the FCRA qualify as willful violations) *citing Safeco Insurance Co. v. Burr,* 127 S. Ct. 2201 (2007) (In the FCRA context, "willfulness" encompasses reckless disregard for the statute's requirements and is assessed objectively).

Most importantly, Plaintiff's complaint contains specific allegations that support his claim that Wells Fargo willfully accessed his credit report without a permissible purpose. Specifically, Plaintiff alleges:

> 29. Accordingly, upon information and belief, Defendant intentionally misrepresented to Experian that Plaintiff was (1) attempting to obtain credit from Defendant or (2) had a current business relationship with Defendant. Compl. ¶29.
>
> 30. Defendant's misrepresentation and false certification that it had a permissible purpose to access Plaintiff's credit report resulted in Experian releasing highly confidential and sensitive personal information concerning Plaintiff to Defendant. Compl. ¶30.
>
> 31. Plaintiff had no account or business transactions with Defendant at the time Defendant obtained his Experian credit report. Compl. ¶31.
>
> 32. Any previous business relationship with Defendant was extinguished via Plaintiff's bankruptcy discharge. Compl. ¶32.
>
> 33. Accordingly, Defendant accessed Plaintiff's Experian credit report without the consent or knowledge of Plaintiff and without a permissible purpose. Compl. ¶33.

> 34. Upon information and belief, Defendant obtained Plaintiff's Experian credit report under the false pretext that Defendant was conducting an "Account Review." Compl. ¶34.
>
> 47. Defendant willfully and maliciously violated §1681b(f) when it accessed Plaintiff's credit report without any permissible purpose under the FCRA. Compl. ¶47.
>
> 50. Upon information and belief, Defendant knowingly and systematically obtains consumer credit reports without a permissible purpose prescribed by the FCRA. Compl. ¶50.
>
> 51. Upon information and belief, Defendant does not maintain policies and procedures to protect consumers' privacy interests and prevent the unlawful access of consumer credit reports. Compl. ¶51

As demonstrated by the face of Plaintiff's complaint, Plaintiff made detailed, non-conclusory allegations that make it plausible that Wells Fargo willfully accessed his credit report without a permissible purpose. As the Supreme Court has held "[t]he plausibility standard is *not* akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. Here, Plaintiff has pled more than a sheer possibility of willfulness, and thus his willfulness claim must survive dismissal.

Courts in this District have regularly found allegations similar to the allegations made by Plaintiff to be sufficient to support a willful §1681b(f) claim. Specifically, in *Gagnon,* the court held that the allegation that the mortgage company "knew at the time it accessed the report that the debt was not collectible because it had been discharged in bankruptcy, but nonetheless invaded Plaintiff's privacy by illegally accessing his credit file" to be sufficient to support a willfulness claim. *Gagnon,* 2017 U.S. Dist. LEXIS 374, at *41 (rejecting defendant's contention that plaintiff failed to state a claim for a willful violation of §1681b(f)). In *Smith*, the court found that the conclusory allegation that a company was "in willful non-compliance when they pulled [a consumer's] credit report without a permissible purpose" in addition to allegations explaining why

11

the company had no permissible purpose to be sufficient to state a willful violation of §1681b(f). *Smith,* 2014 U.S. Dist. LEXIS 27884, at *11-14. The *Smith* court ultimately and properly held that plaintiff's allegations must be taken as true at the pleading stage and that the aforementioned allegations support a claim for a willful violation of §1681b(f). *Id.* at *13. Moreover, in *Santangelo v. Comcast Corp.,* 162 F. Supp. 3d 691 (N.D. Ill. 2016), the court found that a plaintiff does not even need to allege that the violating conduct was "willfull" in order to state a willful §1681b(f) claim. *Id.* at 700. The *Santangelo* court held that allegations that a company regularly obtained credit reports despite knowing it did not have a legitimate business need for them to be sufficient to sustain a willful §1681b(f) claim. *Id.* Notably, the *Santangelo* court also found that the aforementioned allegations "imply recklessness at the very least, and reckless conduct qualifies as willful conduct under the FCRA." *Id. citing Murray.,* 523 F.3d at 725-26.

Other courts have found allegations much gentler and less specific than the allegations in this case to be sufficient to plead a willful §1681b(f) claim. *See Adams v. Fifth Third Bank,* 2017 U.S. Dist. LEXIS 18932, at *18 (W.D. Ky. 2017) (finding plaintiffs' allegations that a creditor "had no right to collect a debt from Plaintiffs, and knowing Plaintiffs had not recently initiated a credit transaction, obtained Plaintiffs' credit reports anyways" to be sufficient to plead a willful §1681b(f) claim); *Augustin v. Equable Ascent Fin.,* 2014 U.S. Dist. LEXIS 184782, at *20-21 (E.D. N.Y. 2014) (finding plaintiff's allegations that defendant had no lawful reason to pull his credit report sufficient to support a willful §1681b(f) claim).

## CONCLUSION

Courts nationwide have consistently held that an entity does not have a permissible purpose to access a consumer's credit report after a bankruptcy discharge. Likewise, this Court held the same in *Freedom*. Wells Fargo's attempts to distinguish *Freedom* are unavailing for the reasons

stated above. Accordingly, Wells Fargo's Motion deserves the same fate as the defendant's motion in *Freedom*, denial. For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated: July 10, 2019　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　/s/ Mohammed O. Badwan
　　　　　　　　　　　　　　　　　　　　　Mohammed O. Badwan, Esq.
　　　　　　　　　　　　　　　　　　　　　Marwan R. Daher, Esq.
　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*
　　　　　　　　　　　　　　　　　　　　　Sulaiman Law Group, Ltd.
　　　　　　　　　　　　　　　　　　　　　2500 S. Highland Ave., Ste. 200
　　　　　　　　　　　　　　　　　　　　　Lombard, IL 60148
　　　　　　　　　　　　　　　　　　　　　Phone (630)575-8180
　　　　　　　　　　　　　　　　　　　　　mbadwan@sulaimanlaw.com
　　　　　　　　　　　　　　　　　　　　　mdaher@sulaimanlaw.com

## **CERTIFICATE OF SERVICE**

I, Mohammed O. Badwan, an attorney, certify that on July 10, 2019, I caused the foregoing to be served upon counsel of record through operation of the Court's Case Management/Electronic Case File (CM/ECF) system.

/s/ Mohammed O. Badwan