## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

WYLIE S. ROGERS, individually, and on )
behalf of all others similarly situated, )
                                   )
                 Plaintiff, )     Case No. 19-cv-02596
                                     )
        v. )     Hon. Steven C. Seeger
                                       )
WELLS FARGO BANK, N.A., )
                                     )
             Defendant. )
_____)

## MEMORANDUM OPINION AND ORDER

This case is about whether Wells Fargo accessed a credit report for a permissible purpose after a debtor filed for bankruptcy. The facts stretch back to 2004, when Plaintiff Wylie Rogers took out a mortgage loan from Wells Fargo. Everyone agrees that, for at least some period of time, Wells Fargo had an interest in the contents of his credit report. After all, Wells Fargo needed to know if Rogers could pay back the loan.

Rogers eventually filed for bankruptcy in 2016. In August 2017, the Bankruptcy Court issued an Order of Discharge, which extinguished his personal liability on many of his debts, including his mortgage loan. Wells Fargo accessed his credit report weeks *after* the Bankruptcy Court issued that Order of Discharge. Rogers owed nothing on the loan, but Wells Fargo obtained his credit report anyway.

Rogers challenged Wells Fargo's action under the Fair Credit Reporting Act, which prohibits access to credit reports except for specifically enumerated purposes. He alleges that Wells Fargo violated the Act by obtaining his credit report after the Bankruptcy Court discharged

the loan.  As Rogers sees it, Wells Fargo had no legitimate reason to access his credit report because the creditor-debtor relationship was over.

Wells Fargo moved to dismiss based in large part on material outside the pleadings.  The bank argues that it had an authorized purpose to obtain the credit report because Rogers still had legal title to the property at the time.  Wells Fargo also argues that it did not act willfully.  But at this early stage, the question is the sufficiency of the complaint, not the viability of Wells Fargo's defenses.  The bank's defenses will have to wait for another day.  The motion to dismiss is denied.

## Background

On a motion to dismiss, the Court accepts the complaint's well-pleaded facts as true, and draws reasonable inferences in the Plaintiff's favor.  *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

In 2004, Rogers purchased a residence on Oglesby Ave. in the south side of Chicago.  *See* Cplt. ¶¶ 2, 10.  He signed a mortgage with Wells Fargo for $106,800, secured by the property.  *Id.* at ¶ 10.  Years passed, and all the while, Rogers never lived there.  *Id.* at ¶ 2.  His fortunes eventually took a turn for the worse.  On June 27, 2016, Rogers and his wife filed for bankruptcy under Chapter 13.  *Id.* at ¶ 11.  His bankruptcy petition included the $82,667 balance of the mortgage loan.  *Id.* at ¶¶ 11–12.

The bankruptcy petition triggered an automatic stay, which prevents creditors from taking any judicial or non-judicial action outside the Bankruptcy Court to enforce claims against the debtor or his property.  *See* Robert E. Ginsberg and Robert D. Martin, *Ginsberg & Martin on Bankruptcy* § 3.01 (5th ed. 2019).  So, Wells Fargo filed a Motion for Relief from the Automatic Stay in the Bankruptcy Court on August 10, 2016, so that it could foreclose on the property.  *See*

2

Cplt. ¶ 14.  Wells Fargo's motion for relief from the stay "acknowledged Plaintiff's intent to surrender the subject property."  *Id.*

The Bankruptcy Court granted Wells Fargo relief from the automatic stay about one week later.  The Order Modifying the Automatic Stay authorized Wells Fargo to "pursue all non[-]bankruptcy remedies and work out options" on the property.  *See* Dckt. No. 17-1, at 2. Wells Fargo later filed a judicial foreclosure action in the Circuit Court of Cook County in November 2016.[1]  *See* Dckt. No. 17-2.

Meanwhile, Rogers made no attempt to retain the property.  In his Chapter 13 Modified Plan on November 1, 2016, Rogers acknowledged that he was surrendering the property to the bank.  "Debtor is surrendering the real property located at 6740 S. Oglesby Ave. . . . to Wells Fargo, in full satisfaction of its secured claims."  *See* Cplt. ¶ 16 (quoting the Modified Plan) (internal quotation marks omitted).

The Bankruptcy Court confirmed the Modified Plan on November 3, 2016.  *Id.* at ¶ 17. Rogers "fully performed his duties and made all payments as set forth in his Confirmed plan." *Id.* at ¶ 18.  He did not reaffirm the loan or express an intent to remain liable on the loan.  *Id.* at ¶ 19.  On the flipside, Wells Fargo did not file anything with the Bankruptcy Court to declare the loan non-dischargeable.  *Id.* at 3 n.2.

On August 24, 2017, the Bankruptcy Court entered an Order of Discharge of "all dischargeable debts, including the subject loan."  *Id.* at ¶ 20.  The Order of Discharge provided that "no one may make any attempt to collect a discharged debt from the debtors personally."

---

[1]  The facts in this paragraph, and a few other facts in the background section (as noted by the citations), do not come from the complaint.  Instead, they come from court filings submitted by Wells Fargo as part of its motion to dismiss.  *See* Dckt. No. 17.  Even so, this Court can take judicial notice of court filings. *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).  The Court includes these facts simply by way of background, to fill in a few gaps in the complaint.

*See* Order of Discharge, Dckt. No. 17-3, at 2 of 3.  The Order of Discharge also entitled creditors such as Wells Fargo to enforce a lien:  "[A] creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated.  For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile."  *Id.*  But the Order did "not prevent debtors from paying any debt voluntarily."  *Id.*

The Order of Discharge extinguished Plaintiff's personal liability on the mortgage loan, "thus terminating the business relationship with Defendant."  *See* Cplt. ¶ 23.  The Bankruptcy Noticing Center served Wells Fargo with the Order of Discharge the next day.  *Id.* at ¶ 21.

So far, so good.  But on September 6, 2017 – almost two weeks after the Bankruptcy Court entered the Order of Discharge – Wells Fargo obtained Plaintiff's credit report from Experian, a credit agency.  *Id.* at ¶ 26.  This notification tipped Rogers off:

WELLS FARGO BANK MTG PO BOX 10335    DES MOINES
IA 50306 (800) 288 3212
Date of inquiry: Sep 06, 2017

*Id.*  Wells Fargo obtained the credit report without his consent or knowledge.  *Id.* at ¶ 33.

Rogers argues that his bankruptcy discharge makes the bank's September 6 action inappropriate under the Fair Credit Reporting Act.  The bankruptcy discharge extinguished his creditor-debtor relationship with Wells Fargo.  *Id.* at ¶¶ 32, 35.  He had no accounts and no transactions with Wells Fargo when the bank obtained his credit report.  *Id.* at ¶ 31.  The business relationship, he claims, was over.  Rogers therefore claims that Wells Fargo lacked the "permissible purpose" necessary to access his credit report after his bankruptcy discharge.  *Id.*

**Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft*

4

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (cleaned up). The Court construes the complaint's sufficiency "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in [the party's] favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (citing *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010)). While a Plaintiff need not plead "detailed factual allegations," he must plead more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

A motion to dismiss for failure to state a claim "must be treated as one for summary judgment under Rule 56" if "matters outside the pleadings are presented to and not excluded by the court." *See* Fed. R. Civ. P. 12(d). Here, Wells Fargo supported its motion to dismiss by filing outside material, including (1) the Order Modifying the Automatic Stay in the Bankruptcy Court; (2) a docket sheet from the foreclosure action filed by Wells Fargo in state court; (3) the Order of Discharge dated August 24, 2017; (4) the Sheriff's Deed dated November 7, 2017; and (5) an assortment of other bankruptcy filings. *See* Dckt. Nos. 17, 40.

### Analysis

Congress passed the Fair Credit Reporting Act ("FCRA") to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007); *see also* 15 U.S.C. § 1681(b). The Act protects confidential information by restricting who can access a consumer's credit report, and when. *Id.* The statute imposes civil liability on "[a]ny person who fails to comply with any requirement imposed" by the FCRA "with respect to any consumer." 15 U.S.C. § 1681n(a).

The Act provides that a "person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." *See* 15 U.S.C. § 1681b(f)(1). So the purpose is key. *Id.* A credit agency needs an "authorized" purpose for providing a credit report, and a recipient needs an "authorized" purpose for receiving it. *Id.* The question, then, becomes whether the credit agency had an authorized purpose for providing Plaintiff's credit report to Wells Fargo.

Section 1681b(a) authorizes credit agencies to furnish credit reports for certain specifically enumerated purposes – and *only* those purposes. *See* 15 U.S.C. § 1681b(a) ("[A]ny consumer reporting agency may furnish a consumer report under the following circumstances and no other."). The parties mention two of the purposes in their briefs. A reporting agency can furnish a report to a person which it has reason to believe:

> (A)    intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
>
> …
>
> (F)    otherwise has a legitimate business need for the information –
>
>    (i)    in connection with a business transaction that is initiated by the consumer; or
>
>    (ii)    to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. §§ 1681b(a)(3)(A), 1681b(a)(3)(F). No one disputes that Wells Fargo is a "person," and that Rogers is a "consumer," within the meaning of the Act. *See* 15 U.S.C. § 1681a.

Rogers alleges that Wells Fargo "willfully and maliciously violated § 1681b(f) when it accessed Plaintiff's credit report without any permissible purpose under the FCRA" by accessing

his credit report after his bankruptcy discharge. *See* Cplt. ¶ 47. To state a claim under section 1681b, a complaint must allege that (1) there was a consumer report; (2) the defendant used or obtained it; and (3) the defendant did so without a permissible statutory purpose. *See Germain v. Bank of America N.A.*, 2014 WL 5802018, at \*3 (W.D. Wis. 2014) (citing *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934, 938 (S.D. Ohio 2008)).

The complaint squarely alleges the first two elements. Wells Fargo obtained Plaintiff's credit report from Experian on September 6, 2017. *See* Cplt. ¶ 26. Indeed, a screengrab of Plaintiff's Experian credit report shows that Wells Fargo accessed the report, and Wells Fargo does not contest that the review occurred. *Id.* No one doubts that Plaintiff's credit report constitutes a "consumer report," which the statute defines as "any written, oral, or other communication of any information . . . bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used" to determine that consumer's eligibility for credit or employment purposes. 15 U.S.C. § 1681a(d).

Wells Fargo's motion to dismiss takes aim at the third element, namely, whether it had a permissible statutory purpose for obtaining the credit report. In the complaint, Rogers alleges that Wells Fargo had no legitimate need to get its hands on the credit report because Wells Fargo was no longer his creditor. Wells Fargo received the Order of Discharge in August 2017, and obtained his credit report on September 6, 2017. *See* Cplt. ¶¶ 21, 26. According to Rogers, Wells Fargo falsely represented to the credit reporting agency that it was conducting an "Account Review," because he had no open accounts to review in the first place. *Id.* at ¶¶ 34–35. As Rogers sees it, he no longer owed the bank any money, so there was no need to review anything.

The motion to dismiss does not rest on the four corners of the complaint at all. Instead, Wells Fargo builds its argument on a collection of material from Rogers's bankruptcy, including the discharge order as well as materials from the eventual sale of the property. *See* Dckt. No. 17; *see also* Dckt. No. 40 (rounding out the record at the request of the Court). Wells Fargo seeks an early adjudication – based on material outside the pleadings – that it was within its rights to obtain the credit report.

According to Wells Fargo, Rogers retained legal title to the property for several months after the discharge order. That is, the Order simply discharged the loan; it did not eliminate the mortgage lien or transfer title to the property. The foreclosure sale took place later, meaning after Wells Fargo obtained the credit report. Specifically, the Circuit Court of Cook County entered final judgment confirming the foreclosure sale to Freddie Mac on October 13, 2017. *See* Dckt. No. 17-2, at 8 of 8; Dckt. No. 17-4, at 2 of 7. The Sheriff's deed transferred title on November 7, 2017, and the deed was recorded in December 2017. *See* Dckt. No. 17-4, at 2 of 7. So, even though the loan was discharged, Rogers still owned the property when Wells Fargo obtained his credit report on September 6, 2017.

Wells Fargo insists that there was nothing wrong with obtaining the credit report because Rogers retained title to the property, which was the security for the mortgage loan. That is, the mortgage *loan* was discharged, but the mortgage *contract* – including the mortgage *lien* – was still in place. *See* Dckt. No. 40-3, at 12 of 31. As long as Rogers owned the property, there was a business relationship between Rogers and Wells Fargo, and thus (so the argument goes) Wells Fargo had the right to access the credit report.

At this early stage, the Court must take the allegations of the complaint as true. *See Reynolds,* 623 F.2d at 1146. All reasonable inferences flow in favor of Rogers, not Wells

Fargo. *Id.* Rogers alleges that the bankruptcy discharge "terminat[ed] the business relationship with Defendant." *See* Cplt. ¶ 23. "Any previous business relationship with Defendant was extinguished via Plaintiff's bankruptcy discharge." *Id.* at ¶ 32. And Plaintiff had "no account or business transactions with Defendant" when Wells Fargo obtained the credit report. *Id.* at ¶ 31. Wells Fargo thus had no "permissible purpose" to obtain the credit report because Rogers "had no open accounts to be 'reviewed' by Defendant as any previous relationship with Defendant was terminated upon entry of Plaintiff's bankruptcy discharge." *Id.* at ¶ 35. Wells Fargo obtained the credit report based on a "misrepresentation," a "false certification," and a "false pretext." *Id.* at ¶¶ 30, 34. Those allegations are more than enough to state a claim that Wells Fargo obtained the credit report without an authorized purpose.

The court reached the same conclusion in *Gagnon v. JPMorgan Chase Bank, N.A.*, 563 B.R. 835 (N.D. Ill. 2017). There, as here, a plaintiff alleged that a mortgage lender had "accessed Plaintiff's credit report after Plaintiff's personal liability on the Mortgage Loan had been discharged in bankruptcy." *Id.* at 852. The plaintiff in *Gagnon* argued that the lender had no legitimate business purpose for accessing the report, because the bank knew that the loan was discharged in bankruptcy and thus was non-collectible. *Id.*

The court in *Gagnon* denied the bank's motion to dismiss because it failed to demonstrate, "as a matter of law based on the pleadings, that it had a legitimate business reason to access Plaintiff's credit report following the bankruptcy discharge." *Id.* The complaint alleged that the bank had no legitimate business reason to access his credit report, and that allegation was enough for the complaint to live to fight another day. The bank's insistence that it acted appropriately made no difference at the motion-to-dismiss stage.

9

Wells Fargo attempts to distinguish *Gagnon* by pigeon-holing it to a particular statutory provision. According to the bank, the court in *Gagnon* "reviewed the challenged actions under Section 1681b(a)(3)(*F*) and not Section 1681b(a)(3)(*A*) which is the basis of plaintiff's claim." *See* Dckt. No. 28, at 3 (emphasis in original). But Rogers's complaint was not so narrow. In fact, the complaint does not cite either provision, let alone the latter provision (only). And that is not surprising. Section 1681b(a)(3) is a laundry list of permissible purposes, and the complaint did not preemptively rebut the affirmative defenses.

Even if the complaint had cited only section 1681b(a)(3)(A), it is far from clear that it would change the balance. Wells Fargo hitches its wagon to the reference in section 1681b(a)(3)(A) to a "review . . . of an account." 15 U.S.C. § 1681b(a)(3)(A). But section 1681b(a)(3)(F), too, refers to a need to "review an account." 15 U.S.C. § 1681b(a)(3)(F). Both sections authorize a third party to obtain a credit report for an account review. Wells Fargo does not explain why one section would allow a bank to obtain a credit report after the discharge of a loan, but the other section would not. If there is any daylight between those two provisions, it is not bright enough to make a difference at this stage.

And even then, the complaint alleges that there was no account to review in the first place. Plaintiff alleges that he "had no account or business transactions with Defendant at the time [it] obtained his Experian credit report." *See* Cplt. ¶ 31. Time will tell whether the facts support that allegation, but in the meantime, the Court must accept it as true.

Rule 12(d) does allow the Court to consider materials outside the pleadings on a motion to dismiss, unless they are "excluded by the court." *See* Fed. R. Civ. P. 12(d). But at this early stage, there are too many unanswered questions for the Court to treat the motion as a motion for summary judgment. For example, after the discharge of the loan, did Rogers still have an

"account" with Wells Fargo within the meaning of the Fair Credit Reporting Act? The parties did not brief the meaning of the statutory text, and at this early stage, there is no evidence before the Court, either.

And why did Wells Fargo obtain Plaintiff's credit report in the first place? Wells Fargo never divulges the reason. Maybe it had something to do with the fact that the mortgage lien survived the Order of Discharge. Maybe, as a second possibility, it was a mistake. Or maybe, as the bank's counsel speculated at oral argument, Wells Fargo looked at the credit report just in case Plaintiff's fortunes changed and he decided to repay the mortgage after all. Without knowing why Wells Fargo obtained the credit report, this Court cannot declare, as a matter of law, that Wells Fargo obtained the credit report for a legitimate reason. What's more, a motion to dismiss is not the time for the defendant to tell its side of the story, let alone receive judgment in its favor based on that story. At the motion to dismiss stage, that is a bridge too far.

Even then, it is not intuitive why the continued existence of a mortgage *lien*, but not a mortgage *loan*, would create a legitimate need to see a former debtor's credit report. A credit report reflects a debtor's ability to pay. But after the bankruptcy discharge, Rogers didn't have an obligation to pay Wells Fargo anything. There was no apparent reason why Wells Fargo needed to know his ability to pay when Rogers owed nothing. Maybe Wells Fargo and Rogers still had some type of relationship, but they no longer had a creditor-debtor relationship. True, Wells Fargo had rights in the *property*, but it had no rights to his *pocketbook*. After discharge, Rogers didn't owe Wells Fargo a nickel.

Even if the continued existence of the mortgage lien could give rise to a legitimate purpose, that doesn't necessarily mean that Wells Fargo acted with that purpose in this particular case. Perhaps Wells Fargo obtained the credit report for a reason that has something to do with

the fact that Rogers still owned the property. Or maybe it was for some other reason. The existence of the mortgage lien presumably was not a license to obtain the credit report for a purpose that had nothing to do with the mortgage lien. If, say, a nosy employee was simply snooping around (as an extreme example), the mortgage lien wouldn't be much of an excuse.

The question is not whether Wells Fargo had a legitimate need to review the (perhaps closed) account. Maybe it did. The facts someday will tell. At this point, the question is whether Wells Fargo is entitled to prevail as a matter of law – again, at the motion to dismiss stage – based on its own assertion that it acted with a legitimate purpose. The mere existence of the mortgage lien does not necessarily mean, as a matter of law, that Wells Fargo obtained his credit report for an authorized purpose on September 6, 2017. For now, all the inferences flow to Plaintiff's side of the ledger, so Wells Fargo will have to wait to present its defense.

The gist of Wells Fargo's argument is that the existence of a mortgage lien is dispositive, and requires dismissal of any claim. Wells Fargo relies heavily on *Freedom v. Citifinancial, LLC*, 2016 WL 4060510 (N.D. Ill. 2016), but it created no such per se rule. There, as here, the plaintiff alleged that the bank had no legitimate business need for his credit report after his bankruptcy discharge. *Id.* at *7. And there, as here, the Court denied a motion to dismiss, and required "[f]urther factual development" about the underlying business justification. *Id.* at *8. True, the Court in *Freedom* noted that the former debtor had surrendered legal title to the property. But nowhere did the Court say that a bank can obtain a credit report *until* the former debtor surrenders title. That is, the Court in *Freedom* never declared that the existence of a mortgage lien, standing alone, is a legitimate business reason for obtaining a credit report.

The Court's decision in *Germain v. Bank of America, N.A.*, 2014 WL 5802018 (W.D. Wis. 2014), does not provide much help to Wells Fargo, either. For starters, that case involved a

12

different procedural posture. *Germain* involved a motion for summary judgment, so the court had the benefit of a full record supported by admissible evidence. Also, the plaintiff in *Germain* fought foreclosure, retained possession of the property, and was negotiating a loan modification with the bank. *Id.* at *7. "Loan modification involves an agreement between the parties on alternative terms for the borrower to fulfill his preexisting obligation to the lender." *Id.* The loan was discharged, but the parties were attempting to work out another arrangement to prevent foreclosure, including future payments to the bank. That is, there were "anticipated transactions after discharge." *Id.* at *5. The bank needed to know if the debtor could make those payments, and the credit report shed light on that issue. *Id.* at *7.

Here, in contrast, there were no discussions about future payments from Rogers to Wells Fargo. Rogers did not resist handing over the keys to the property, and the parties were not negotiating future payments to avoid foreclosure. The complaint unequivocally alleges that the creditor-debtor relationship was over: "At no time did Plaintiff reaffirm the subject loan with Defendant or otherwise state an intent to remain liable on the subject loan." *See* Cplt. ¶ 19. For now, that allegation (and others in the same vein) suffices to defeat the motion to dismiss.

As an alternative ground for dismissal, Wells Fargo argues that Rogers has not adequately alleged that Wells Fargo willfully violated the FCRA, as required to recover damages. *See* 15 U.S.C. § 1681n(1). A practice is willful when "the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 69 (2007). "Only a reading that is 'objectively unreasonable' can be deemed a 'willful' violation." *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486, 490–91 (7th Cir. 2012) (quoting *Safeco Ins. Co.*, 551 U.S. at

69). All too often, willfulness is a fact-specific inquiry that courts cannot resolve on a motion to dismiss. *See Lavery v. RadioShack Corp.*, 2014 WL 2819037, at *2 (N.D. Ill. 2014) (citing *Romano v. Active Network, Inc.*, 2009 WL 2916838, at *3 (N.D. Ill. 2009)).

Rogers has alleged enough to survive a motion to dismiss. He alleges that Wells Fargo received the Order of Discharge extinguishing his dischargeable debts – including the subject loan – over a week before the bank accessed his credit report. *See* Cplt. ¶¶ 20–23, 25–26. So, according to the complaint, Wells Fargo knew that the obligation to pay the loan was gone, and that Rogers owed the bank nothing. *Id.*

The complaint also alleges deception by Wells Fargo. The bank "intentionally misrepresented" to the credit agency that it had a legitimate purpose to obtain the credit report. *Id.* at ¶ 29. That is, Wells Fargo obtained the credit report through a "false certification," a "false pretext," and a "false premise." *Id.* at ¶¶ 30, 34, 55. And he alleges (albeit in conclusory fashion) that Wells Fargo's review of his credit report constituted a "willful and malicious[]" violation of the FCRA. *Id.* at ¶ 47.

Wells Fargo argues that the Supreme Court in *Safeco* established a "three-part test" (Dckt. No. 16, at 1) for a showing of recklessness. *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68–70 (2007). As Wells Fargo sees it, a plaintiff must establish that the account review violated (1) the plain language of the statute; (2) a binding regulation; or (3) a binding decision from the Court of Appeals. *See* Dckt. No. 28, at 3–4. And according to Wells Fargo, the complaint alleges no such thing.

But Wells Fargo reads too much into *Safeco.* The Supreme Court did not purport to establish any such three-part test at all. If anything, the Court seemingly did the opposite. The Court held that willfulness includes recklessness, and then drew the general boundaries of

recklessness based on the "common law understanding." *See Safeco*, 551 U.S. at 56–60, 68–70. Recklessness requires a showing that a defendant "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Indeed, there was "no need to pinpoint the negligence/recklessness line." *Id.* A defendant can cross the line a number of ways, not merely in the three ways contemplated by Wells Fargo's newly minted test.

In sum, Rogers alleges that Wells Fargo knew that the loan was uncollectible, yet obtained the credit report anyway, and did so through deception. At the pleading stage, that is enough. *See Gagnon*, 563 B.R. at 854 (holding that allegations of willfulness survived a motion to dismiss when the plaintiff alleged that the defendant knew that the debt was not collectible because of the bankruptcy discharge, but accessed his credit report nonetheless).

### Conclusion

Defendant's motion to dismiss is denied. Defendant shall answer Plaintiff's complaint by March 27, 2020.


Date: March 6, 2020                             _____
                                                Steven C. Seeger
                                                United States District Judge